IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**MARY R. STEVENS,** *et al.*                                                                      **PLAINTIFFS**

**v.**                                                                    **CIVIL ACTION NO.: 1:24-cv-94-HSO-MTP**

**FLAGSTAR BANK, NATIONAL**
**ASSOCIATION,** *et al.*                                                                      **DEFENDANTS**

## ORDER

THIS MATTER is before the Court on Plaintiffs Mary and Gary Stevens's Motion to Compel Discovery Responses from Defendant Flagstar Bank, National Association [141]. Having carefully considered the Motion [141], the applicable law, and the parties' submissions, the Court finds that the Motion [141] should be GRANTED in part and DENIED in part as set forth below.

## BACKGROUND

On June 3, 2024, Plaintiffs propounded written discovery requests on Defendant Flagstar Bank, National Association ("Flagstar"). *See* [24] [25]. Since then, the parties have reached an impasse regarding the propriety of Flagstar's responses to a number of Plaintiffs' interrogatories and requests for production.

On October 28, 2024, the undersigned conferred with the parties and addressed the issues that arose concerning Flagstar's responses (among others). *See* Minute Entry 10/28/2024. No ruling was made. The undersigned, however, directed the parties to confer further and permitted

1

the filing of appropriate discovery motions absent agreement among the parties.[1]  Unable to resolve the issues without the Court's intervention, Plaintiffs' Motion to Compel [141] followed.

Plaintiffs demand supplemental responses to Interrogatory Nos. 7-8 and Requests for Production Nos. 15-16.  Interrogatory No. 7 and Request for Production No. 15 seek information that identifies "every occasion or incident for which [Flagstar] ha[s] been found in violation of the Real Estate Settlement Procedures Act" ("RESPA").  [143] at 2; 4-5.  Interrogatory No. 8 and Request for Production No. 16 relate to the facts and circumstances giving rise to the entry of the December 2021 Consent Order ("Consent Order") entered between Flagstar and the Office of the Comptroller of the Currency ("OCC").

Plaintiffs say that the information sought through Interrogatory No. 7 and Request for Production No. 15 "is directly relevant to their claims that Flagstar knowingly violated RESPA, or was grossly negligent in doing so."  *Id*. at 7.  Additionally, Plaintiffs say that the information sought through Interrogatory No. 8 and Request for Production No. 16 is relevant to their claim "that Flagstar mishandled their escrow funds and caused their flood insurance coverage to lapse for non-payment of the premium."  *Id*.

Flagstar objects to each request based on relevance and proportionality.  Flagstar also complains that the requests identifying any RESPA violations are unduly burdensome "since Flagstar has identified thousands of complaints against [it] with no way of determining whether such complaints are responsive to Plaintiffs' requests without conducting a manual review." [158] at 2-3.  Flagstar further argues that Plaintiffs' requests concerning the Consent Order are "premature," and that these requests seek "non-public information" that belongs to the OCC.  *Id*.

---

[1] Additionally, on January 3, 2025, the Court permitted Plaintiffs to file a motion to compel discovery limited to the discovery requests presented herein.  *See* Order [140].

Thus, according to Flagstar, Plaintiffs need to first obtain permission from the OCC to give Flagstar the authority to produce the requested information, which they apparently have not done.

## ANALYSIS

Federal Rule of Civil Procedure 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Such discovery must also be "proportional to the needs of the case[.]" *Id*. At the discovery stage, relevancy is broadly construed, and information is considered relevant if it "encompass[es] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). At some point, however, discovery yields diminishing returns, needlessly increases expenses, and delays the resolution of the parties' dispute. Finding a just and appropriate balance in the discovery process is one of the key responsibilities of the Court, which has broad discretion over the scope of discovery. *See Dominick v. Mayorkas*, 52 F.4th 992, 995 (5th Cir. 2022). Applying these principles of law, the Court finds as follows:

***Interrogatory No. 7***

The Motion is GRANTED in part and DENIED in part as to Interrogatory No. 7. Plaintiffs ask Flagstar to "identify every occasion or incident" that it had been found in violation of RESPA. [143] at 2. As written, the request is far too broad and disproportional to the needs of the case as it is unlimited in both time and scope. The Court narrows the requests as follows: Flagstar shall supplement its responses to Interrogatory No. 7 and identify any instance that it has

3

been found in violation of 12 U.S.C. § 2605(1)(e), (g) and (k)[2] from June 1, 2020, through June 1, 2022—in other words, from one year before and after the date Flagstar began servicing Plaintiffs' loan. *See* [111] at 3. The Court finds that a two-year period should be sufficient to satisfy Plaintiffs' stated discovery objectives.

***Request for Production No. 15***

The Motion is GRANTED in part and DENIED in part as to Request for Production No. 15. This request seeks the production of "all documents related to or involving every occasion or incident" wherein Flagstar had been found in violation of RESPA. [143] at 4-5. Like Interrogatory No. 7, Request for Production No. 15 is far too broad and disproportional to the needs of the case. Aside from being too broad in both time and scope, the request demands every "related" document.

Flagstar says that it has identified 2,345 complaints "that may be responsive to this request" and 2,966 "actual or purported 'notices of error'" or "information requests," none of which may be verified without "manual review." [158] at 7-8. Flagstar estimates the cost of such a review would "be approximately $265,550 to $531,100." *Id*. at 8. Plaintiffs say Flagstar eludes a proper response by identifying "complaints" and notices of error or requests for information—not violations. [161] at 2.

While documents supporting or verifying the violations identified in response to Interrogatory No. 7 ought to be produced, the Court will not require Flagstar to respond in such a way that renders it financially impossible to defend the case. For each violation identified in response to Interrogatory No. 7, Flagstar shall provide the document(s) which identify the

---

[2] In their Amended Complaint [111], Plaintiffs allege Flagstar violated only these sections of RESPA. *See* [111] at 9-10.

alleged violations (such as a complaint, letter, notice, etc.) and the document(s) which confirmed the violations (such as a judgment, agreement, etc.).  By limiting the scope of the request accordingly, Plaintiffs can determine if Flagstar violated 12 U.S.C. § 2605(1)(e), (g) and (k) without the process being prohibitively expensive, or stated another way, proportional to the needs of the case.

***Interrogatory No. 8***

  The Motion is GRANTED as to Interrogatory No. 8.  Plaintiffs ask Flagstar to describe "the facts and circumstances giving rise to the December 2021 Consent Order" filed with the OCC.[3]  [143] at 3.  Flagstar argues that the request seeks information which would not be relevant to Plaintiffs' claims.  In support, Flagstar says that the findings giving rise to the Consent Order involve violations of the National Flood Insurance Act ("NFIA"), not RESPA, from February 2017 to February 2020.  Flagstar contends that "[n]owhere in the 2021 Consent Order does the OCC address any violation of RESPA whatsoever."  [157] at 10.  Flagstar also says that it did not begin servicing Plaintiffs' loan until June 2021—outside the scope of the instances giving rise to the Consent Order.  Flagstar further claims that any information relating to the Consent Order "belongs to and is within the authority and control of the OCC and the Plaintiffs have not requested the OCC for the information."  *Id*. at 9.

  Flagstar's arguments are not persuasive.  The fact that the violations were under NFIA and not RESPA does not automatically render them irrelevant.  Indeed, the Consent Order identified possible violations of the NFIA's requirements to "timely pay flood insurance premiums collected in escrow[,]" the gravamen of Plaintiffs' claims in this matter.  [111-19] at 2.

---

[3] A copy of the Consent Order is filed as Docket Entry [111-19].

Within reasonable limits, similar "facts and circumstances" regarding Flagstar's alleged failure to timely pay flood insurance premiums collected in escrow are discoverable here.

Additionally, Interrogatory No. 8 does not request privileged information belonging to the OCC. Even if it did and as with all privileges, the underlying facts, precisely the information that Plaintiffs requested, are not protected. Flagstar shall supplement its response and explain the "facts and circumstances" that gave rise to the Consent Order. Particularly, Flagstar shall identify any "facts or circumstances" that indicate whether any such violations stemmed from Flagstar's alleged mishandling of its clients' escrow funds with respect to its failure to timely pay flood insurance premiums.

***Request for Production No. 16***

The Motion is DENIED without prejudice as to Request for Production No. 16. Request for Production No. 16 seeks "all documents related to or involving the December 2021 Consent Order" filed with the OCC. [143] at 5. The request is rather problematic, and Flagstar objects on multiple grounds.

Flagstar first objects to this request by arguing that it seeks irrelevant information. However, as noted, the Consent Order expressly identified Flagstar's possible violations of the NFIA's requirements to "timely pay flood insurance premiums collected in escrow." [111-19] at 2. That alone justifies discovery into the facts giving rise to the Consent Order. As Flagstar has thus far declined to identify those facts, it is difficult, if not impossible, to fairly address a related document request.

As written, however, the request is overly broad and unduly burdensome. Flagstar maintains that the request is disproportional to the needs of the case, saying that it has identified 5,200 documents "that may be responsive" to this request. [158] at 12. To make that

6

determination, however, Flagstar said it would cost approximately $416,000.  *Id*.   Plaintiffs counter and say that Flagstar is evading a response to Request for Production No. 16 by identifying only "potentially responsive documents" and not those "related" to the Consent Order.  [161] at 3.

Even if a response to Request for Production No. 16 costs only a fraction of that estimated by Flagstar, such an expense might render the request disproportionate to the needs of this case.  Giving the number of "potentially responsive documents" and costs involved, the request must be reduced significantly.  Discovery cannot be so broad that the cost of production swallows the value of the case and forces a party to incur potentially unnecessary and unreasonable costs, especially when it addresses "similar" conduct and not the actual transaction or event at issue.

In Plaintiffs' defense, however, they have been forced to submit such a broad request as Flagstar has declined to respond to an interrogatory and identify the "facts and circumstances" that gave rise to the Consent Order.  Perhaps cooperation in that regard might reduce the information sought by this request.  Accordingly, the Court finds that Request for Production No. 16 is disproportionate to the needs of the case at this time.

The Court could deny the Motion [141] as to Request for Production No. 16 on additional grounds and will address those issues here in an effort to move discovery forward without further disputes.  In further response to this request, Flagstar argues that the documents requested are "non-public" information belonging to the OCC.  Flagstar says that, under 12 C.F.R. §§ 4.31, *et seq*., all "non-public OCC information remains the property of the OCC" and may not be disclosed "without the prior written permission of the OCC."  [157] at 7 (citing 12 C.F.R.

7

§4.36(d)). Plaintiffs may request this information from the OCC, says Flagstar, but they have not properly done so. *See* [158] at 11.

Plaintiffs disagree, and say that, at a minimum, Flagstar should be required to "identify responsive documents that are *related* to the 2021 Consent Order in a privilege log so they can be requested from the OCC." [161] at 3 (emphasis in original).

According to 12 C.F.R. § 4.32, "non-public" OCC information includes at least the following: (1) "a record created or obtained [ ] by the OCC in connection with the OCC's performance of its responsibilities, such as a record concerning supervision, licensing, regulation, and examination of a national bank, a Federal savings association, a bank holding company, a savings and loan holding company, or an affiliate;" (2) "a record compiled by the OCC or the OTS in connection with either agency's enforcement responsibilities;" and (3) "a report of examination, supervisory correspondence, an investigatory file compiled by the OCC or OTS in connection with an investigation, and any internal agency memorandum, whether the information is in the possession of the OCC or some other individual or entity." 12 C.F.R. § 4.32 (b)(1)(i)-(iii).

The regulations also set forth the procedures for sending a request to the OCC for use of its non-public information.[4] *Id.* at § 4.33-35. Additionally, the regulations state that "[a]ll non-public OCC information remains the property of the OCC. No supervised entity, government agency, person, or other party to whom the information is made available ... may disclose non-

---

[4] 12 C.F.R. § 4.33 sets forth the requirements for a request of records or testimony for a person seeking non-public OCC information. Under the regulation, Plaintiffs must first submit a request in writing to the OCC, explain the bases for the request, and explain how the requested non-public OCC information relates to the issues in Plaintiffs' lawsuit. *See* 12 C.F.R. § 4.33. After a request is made, Plaintiffs could seek a court order requiring the disclosure of the information but apparently only after the OCC is first given the opportunity to appear and oppose the discovery. *See* 12 C.F.R. § 4.37(b)(1)(i)(A-B).

public OCC information without the prior written permission of the OCC." *Id.* § 4.36. And the limitation on disclosure exists even if the information is in another's possession. *Id.* § 4.37(d).

Because the regulations define "non-public information" broadly, the Court cannot definitively say that Plaintiffs' request does not include information that could fall under the definition—even if the information is in Flagstar's possession. Plaintiffs appear to acknowledge that at least some documents responsive to this request may implicate the OCC. *See* [157-1] at 3. The Court agrees with Flagstar that Plaintiffs may not move to compel the production of any "non-public information" belonging to the OCC without first contacting the agency and following its procedures for obtaining that information. *See In re JPMorgan Chase Mortg. Modification Litigation*, 2012 WL 5947757, at *2 (D. Mass. Nov. 27, 2012); *Ahern v. Bank of Am. Corp.*, 2012 WL 4986556, at *1 (D. Mont. Oct. 17, 2012).

Accordingly, for the reasons stated, the Motion [141] is DENIED without prejudice to Request for Production No. 16.

IT IS, THEREFORE, ORDERED that:

1. Plaintiffs Mary and Gary Stevens's Motion to Compel Discovery Responses from Defendant Flagstar Bank, National Association [141] is GRANTED in part and DENIED in part; and

2. To the extent that supplementation is required by this Order, Defendant Flagstar Bank, National Association shall supplement its responses by not later than February 17, 2025.

SO ORDERED, this the 3rd day of February, 2025.

s/Michael T. Parker  
United States Magistrate Judge